IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>AHMAD THABIT ALI ALSHAREEF<br>a/k/a/ Ahmad "ALSHERIFF,"<br>a/k/a Ahmad "ELSHERIFF,"<br><br>Defendant. | Case No. 1:26-mj-87 |

## AFFIDAVIT IN SUPPORT OF A
## CRIMINAL COMPLAINT AND ARREST WARRANT

I, Alissa Thayer, a Special Agent with the Federal Bureau of Investigation ("FBI"), being

first duly sworn, depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have

been so employed since 2023. As such, I am an "investigative or law enforcement officer of the

United States" within the meaning of 18 U.S.C. § 2510(7), empowered by law to conduct

investigations of and to make arrests for offenses enumerated in Titles 18 and 21 of the United

States Code.

2.      I am currently assigned to the Washington Field Office Child Exploitation and

Human Trafficking Task Force located at the FBI's Northern Virginia Resident Agency. As part

of my duties as an FBI agent, I am responsible for investigating crimes against children, to include

kidnappings, sexual exploitation, and human trafficking. As a result of my training and experience,

I am familiar with the tactics, methods, and techniques utilized by those who commit such crimes.

As a federal agent, I am authorized to investigate violations of the laws of the United States and to execute warrants issued under the authority of the United States.

3.     I make this affidavit in support of a criminal complaint and arrest warrant charging Ahmad Thabit Ali AlShareef, a/k/a "Ahmad AlSheriff" or "Ahmad ElSheriff," (hereinafter, "**AHMAD**"), with international parental kidnapping, in violation of 18 U.S.C. § 1204(a).

4.     I have participated in the investigation of the aforementioned offense. The facts and information contained in this affidavit are based on my personal knowledge of the investigation and information obtained from other law enforcement officers and witnesses, as well as my training and experience. All observations referred to in this affidavit that were not personally made by me were relayed to me by the persons who made such observations or in reports that detailed the events described by those persons. Unless otherwise indicated, where the statements of others are related herein, they are related in sum and substance and not verbatim.

5.     This affidavit contains information necessary to support probable cause and has been prepared only for the purpose of obtaining a criminal complaint and arrest warrant. Therefore, it contains neither all of the information known to me concerning the offense nor every fact learned by the government during the course of its investigation thus far.

## PROBABLE CAUSE

6.     On December 7, 2018, **AHMAD** and T.E.R., were married in Alexandria, Virginia, in the United States of America. During their marriage, they lived in Alexandria, Virginia, within the Eastern District of Virginia, and had two children together. Minor Victim-1 (MV-1) was born in February 2020, and Minor Victim-2 (MV-2) was born in October 2021. Both MV-1 and MV-2 are United States Citizens.

2

7.    In and around September 2021, **AHMAD** and T.E.R. began living separately. At the time, T.E.R. was residing in Springfield, Virginia, within the Eastern District of Virginia, and **AHMAD** relocated to Texas to pursue a medical degree. **AHMAD** requested that T.E.R. purchase a house for them in Texas, which she did, and insisted she quit her job and move the children to Texas. T.E.R. refused to quit her job and move. T.E.R. continued to travel between Virginia and Texas with MV-1 and MV-2 for approximately two years.

8.    In and around February 2023, T.E.R., MV-1, and MV-2 traveled to Texas to see **AHMAD**. The day after their arrival, **AHMAD** struck T.E.R. in the face in an instance of domestic violence. A neighbor saw the altercation and called the police. **AHMAD** was charged with assault on T.E.R. and for interfering with emergency request for assistance.

9.    A protection order was filed against **AHMAD** for the domestic violence in Texas related to the domestic assault in February 2023. **AHMAD** begged T.E.R. to drop the charges against him because he could not serve as a doctor with the assault on his record and she agreed.

10.    In and around March 2023, **AHMAD** was working at the University of New Mexico Hospital (UNMH) in Albuquerque, New Mexico, United States. While working there, he matched with a woman on a dating application called "Bumble." The woman also worked at UNMH, and they agreed to have coffee at the hospital. During this encounter, **AHMAD** brought the woman back to his office and sexually assaulted her. The woman filed a report with a detective from the University of New Mexico's Department of Sexual Misconduct Team.

11.    The detective assigned to the case contacted **AHMAD** and advised him of the allegations. Multiple attempts to contact and locate **AHMAD** were made unsuccessfully due to **AHMAD** being terminated at UNMH and not having a fixed address.

3

12. A summons for **AHMAD** to appear for the sexual assault charges was sent and a hearing date was scheduled for May 2023. **AHMAD** did not appear for the hearing. Subsequently, an arrest warrant was issued in May 2023 and remains active in March 2026.

13. In and around September 2023, **AHMAD** left the United States. **AHMAD** traveled from Washington Dulles International Airport to Saudi Arabia and his presence on board this flight was confirmed by the United States Customs and Border Protection. **AHMAD** traveled alone and left T.E.R. and the minor children, MV-1 and MV-2, in Springfield, Virginia, within the Eastern District of Virginia. **AHMAD** has not re-entered the United States since this time.

14. Since 2023, MV-1 and MV-2 have resided solely with T.E.R. in Virginia and attended elementary school and pre-school in Prince William County, Virginia. They received regular medical care and were supported by T.E.R. and other family members in the area.

15. The legal rights of parents to care, custody, and control of their children are recognized as fundamental liberty interests that do not diminish or expire simply because parents live in separate households. *See Troxel v. Granville*, 530 U.S. 57, 66 (2000). In Virginia, the law recognizes "no presumption or inference of law in favor of either parent" regarding custody, ensuring that both parties maintain equal standing regardless or their marital status or residential status. Va. Code § 20-124.2(B). This is further protected by the "parental presumption," which dictates that a child's best interests are inherently served by being in the custody of their natural parent unless a parent is proven unfit. *Brown v. Burch*, 30 Va. App. 670, 685 (1999) (quoting *Bottoms v. Bottoms*, 249 Va. 410, 414 (1995)). These parent rights remain fully intact and can only be terminated by a court upon finding clear and convincing evidence of unfitness or extreme circumstances. *See* Va. Code § 16.1-283.

4

16.    From on or about August 2021 until September 18, 2025, T.E.R. was the primary caregiver and the parent who exercised day-to-day parental rights and responsibilities for MV-1 and MV-2, including providing housing, financial support, medical care, education, and daily supervision.

17.    On or about September 14, 2025, T.E.R. flew from the Washington Dulles International Airport with MV-1 and MV-2 to Saudi Arabia to visit **AHMAD**, arriving on or about September 15, 2025. **AHMAD** requested that T.E.R., MV-1 and MV-2 travel to Saudi Arabia to visit him again, as they had done in September 2024.  **AHMAD** was in a residency program at the local hospital and requested that T.E.R. and the children stay at his residence while visiting so he could maximize seeing the children between his shifts.

18.    On or about September 18, 2025, according to T.E.R., **AHMAD** physically assaulted T.E.R. in another instance of domestic abuse. This attack occurred in front of the minor children. **AHMAD** continued to assault T.E.R. while demanding she give him the passports for MV-1 and MV-2. T.E.R. refused to give him the passports and **AHMAD** locked her in a windowless room in the house overnight. During the time she was locked in the room, T.E.R. could not hear the children.

19.    On or about September 19, 2025, T.E.R. was released from the room by **AHMAD**, who continued to demand the children's passports. When asked where MV-1 and MV-2 were, **AHMAD** told her that the children were "gone." **AHMAD** threatened to kill T.E.R. if she did not leave Saudi Arabia without the children, then took T.E.R.'s luggage and began looking for the passports again in his office. While **AHMAD** looked through the luggage, T.E.R. escaped from a window in the house and went for help from the local police.

20. T.E.R. and **AHMAD** arrived separately at the local police station. The police arrested **AHMAD** for the physical assault on T.E.R. and kept him overnight. While in custody, **AHMAD** still had access to his cellular telephone and made calls to his family. T.E.R. overheard these calls telling his family to take the children on a flight. T.E.R. was then transported to the local hospital and received treatment for injuries sustained during the assault.

21. T.E.R. reported the children missing to the Children's Protection Office in Saudi Arabia and reported the assault and abduction to the United States Consulate, located in Riyadh, Saudi Arabia. The Children's Protection Office opened a case and requested **AHMAD** bring the children in for a wellness check. **AHMAD** did not produce the children.

22. On October 29, 2025, T.E.R. made a request for an emergency custody hearing for MV-1 and MV-2 was received by the Arlington County Juvenile and Domestic Relations District Court, located in the Eastern District of Virginia.

23. On November 25, 2025, the emergency custody hearing took place at the Arlington County Juvenile and Domestic Relations District Court. A temporary order was issued providing T.E.R. with sole physical and legal custody of MV-1 and MV-2.

24. On February 4, 2026, a final order of divorce was issued in the Circuit Court of Arlington County, Virginia, which officially dissolved the marriage of **AHMAD** and T.E.R.

25. On February 6, 2026, a custody hearing took place in the Arlington County Juvenile and Domestic Relations District Court. A final order was issued granting T.E.R. with sole physical and legal custody of MV-1 and MV-2.

26. On February 12, 2026, the Children's Protection Office in Saudi Arabia performed a home visit in an attempt to locate **AHMAD** and the minor children at his residence. The residence

6

was abandoned and the whereabouts of **AHMAD** and minor children, MV-1 and MV-2 are unknown, with the minor children having not been seen since approximately September 18, 2025.

**CONCLUSION**

27.    Based on the facts above, I respectfully submit that there is probable cause to believe that in and around September, 2025, and continuing through the date of this affidavit, in Prince William County, within the Eastern District of Virginia and elsewhere, **AHMAD** is retaining MV-1 and MV-2, who both had been in the United States, outside the United States and is doing so with the intent to obstruct the lawful exercise of parental rights of T.E.R., in violation of Title 18, United States Code, Section 1204(a).

28.    Accordingly, I request that a complaint and arrest warrant be issued charging Ahmad Thabit Ali AlShareef, a/k/a "Ahmad AlSheriff" or "Ahmad ElSheriff,", with such offenses.

Respectfully submitted,

**ALISSA THAYER**
Digitally signed by ALISSA THAYER
Date: 2026.03.24 09:29:49 -04'00'

Alissa Thayer
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to in accordance with
Fed. R. Crim. P. 4.1 by telephone on
March 24, 2026.

Lindsey R Vaala
Digitally signed by Lindsey R Vaala
Date: 2026.03.24 11:15:58 -04'00'

The Honorable Lindsey R. Vaala
United States Magistrate Judge